Filed 11/15/13  Hauser v. Nelson CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| PHIL HAUSER, | D062611 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00053288-CU-DF-NC) |
| BEATRICE NELSON, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Affirmed.

Phil Hauser, in pro. per., for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Plaintiff and appellant Phil Hauser, appearing in propria persona as he did in the trial court, appeals the order granting under Code of Civil Procedure section 425.16[1] the

---

[1]     All statutory references are to the Code of Civil Procedure unless indicated otherwise.  Section 425.16 is commonly referred to as the anti-SLAPP statute.  (*Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1568.)  SLAPP is an acronym for "'strategic

anti-SLAPP motion of 89-year-old defendant and respondent Beatrice Nelson[2] to strike his verified complaint asserting two defamation claims against Nelson. The court ruled Nelson satisfied her burden under subdivision (b)(1) of section 425.16 to make a prima facie showing her speech that gave rise to Hauser's claims was protected under subdivision (e)(3) of section 425.16 as a written or oral statement made in a public forum in connection with an issue of public interest. The court also ruled Hauser could not satisfy his burden under subdivision (b)(1) of section 425.16 to establish a probability of success on his claims.

As we explain, we independently conclude the trial court properly granted Nelson's anti-SLAPP motion.

## FACTUAL AND PROCEDURAL BACKGROUND

At all times relevant, Hauser and Nelson were residents of a seniors-only mobilehome community known as San Luis Rey Homes (SLRH) located in Oceanside, California. Hauser alleges that in February and again in March 2012, Nelson published statements to SLRH owners/members, the board of governors of SLRH (board) and the San Diego County District Attorney's Office generally questioning the propriety of the

---

lawsuit against public participation.'" (*Jarrow Formulas*, *Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

[2] Nelson did not submit a respondent's brief in this proceeding. However, we do not "treat the failure to file a respondent's brief as a 'default' (i.e., an admission of error) but independently examine the record and reverse only if prejudicial error is found." (*Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1203, citing *In re Bryce C.* (1995) 12 Cal.4th 226, 232-233 and *In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, 1078, fn. 1; cf. *In re Bryce C.*, *supra*, at p. 232 ["If an *appellant* fails to file a brief, the appeal may be dismissed entirely."].)

board's use of funds to pay Hauser and others in connection with a project headed up by Hauser to upgrade SLRH's aging utility infrastructure (revitalization project).

Hauser sued Nelson in May 2012 for defamation as a result of what Hauser maintains was Nelson's "negativity campaign" against the revitalization project, which he notes has "severely handicapped" SLRH's ability to obtain grant funds for the project, and as a result of comments Nelson published about Hauser and his role and involvement in that project.

Nelson moved under section 425.16 to strike Hauser's complaint, contending her speech was constitutionally protected under subdivision (e)(3) of that statute as it involved statements concerning the "'manner in which a large residential community would be governed'" and, as such, were matters of "'public interest.'" Specifically, Nelson contended she was sued by Hauser because Nelson had been the "person most persistently vocal in . . . questioning . . . the Board's policies, decisions and expenditures" in connection with the revitalization project, which the board estimated could cost $9.2 million.

The trial court granted Nelson's anti-SLAPP motion, ruling as follows:

"Construing the statute broadly, Defendant has satisfied her burden of showing that her speech that gave rise to the Plaintiff's complaint is protected by CCP § 425.16(e) as a written or oral statement made in a place open to the public or a public forum in connection with an issue of public interest.

3

"The Board meetings and the Minutes from such constitute a public forum. (*Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 475.)  The Court is not persuaded that the forum in *Damon* is distinguishable from this case because of the factors argued by Plaintiff including, but not limited to, the size of the community and the value of the property.

"The subject of the speech is public interest.  Most of the statements alleged in the complaint concern Defendant's opinion about (i) the Board's failure to abide by the Bylaws, (ii) Plaintiff being paid by the Board for his position as Treasurer and as a consultant for the Project, and (iii) the Board not requiring Plaintiff to account for his time.  Plaintiff's employment and the Revitalization Project[] itself are subject to the Bylaws of SLRH and affect financial obligations of all owners as shareholders of San Luis Rey Homes, Inc.  Therefore, the subject of most of the statements alleged by Plaintiff to be defamatory concerns a public interest because all owners of SLRH have an interest in the Project.

"Lastly, the statement concerning financial elder[] abuse would also be an issue of public interest because it concerns alleged financial manipulation of the entire group.

"Based on the foregoing, Defendant has made a prima facie showing that the speech at issue in the complaint is written or oral statements made in a public forum in connection with an issue of public interest.  As such, the burden shifts to Plaintiff to establish a 'probability' that plaintiff will prevail on whatever claims are asserted against defendant.

4

"Plaintiff did not satisfy that burden. Almost . . . all of these statements by Defendant are statements of opinion or concern inaction of the Board. Defendant's speech concerns the failure of the Board to approve changes of the bylaws and whether Plaintiff is paid too much. Any insinuation that Plaintiff is not doing the work he is paid to do really concerns the Board's lack of supervision or failure to account for members' money paid to Plaintiff when it is read in conjunction with the rest of the allegations. Again, this statement concerns the Board not Plaintiff.

"In his second cause of action Plaintiff alleges statements made by Defendant concerning financial elder abuse. Defendant indicates that these were published to the District Attorney's Office. Defamation is not the appropriate cause of action with regard to this statement because any statements to the District Attorney, especially those concerning any type of elder abuse would be protected by privilege. Plaintiff would need to allege malicious prosecution or, given the appropriate circumstances, abuse of process.

"Based on the foregoing, it is not likely that Plaintiff would prevail. Therefore, the Anti-SLAPP motion is granted and the complaint is stricken."

DISCUSSION

A. *Guiding Principles*

As correctly noted by the trial court, a court employs a two-step analysis in determining whether one or more causes of action should be stricken under the anti-SLAPP statute. (§ 425.16, subd. (b)(1).) In the first step, the defendant bears the initial burden of making a prima facie showing that the cause of action "aris[es] from any act of

5

that person in furtherance of the person's right of petition or free speech . . . ." (*Ibid.*; see also *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 473 (*Damon*).)

Subdivision (e) of section 425.16 provides that an "'act in furtherance of a person's right of petition or free speech'" under subdivision (b)(1) of section 425.16 includes "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

If the defendant meets this threshold burden, in the second step the burden then shifts to the plaintiff to "establish[] that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1); see also *Kleveland v. Siegel & Wolensky, LLP* (2013) 215 Cal.App.4th 534, 548 (*Kleveland*).)

"Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' [Citation.] For purposes of an anti-SLAPP motion, '[t]he court considers the pleadings and evidence submitted by both sides, but does not weigh credibility or compare the weight of the evidence. Rather, the

6

court's responsibility is to accept as true the evidence favorable to the plaintiff . . . .' [Citation.]" (*Kleveland*, *supra*, 215 Cal.App.4th at p. 548.)  "These determinations are legal questions, and we review the record de novo." (*Damon*, *supra*, 85 Cal.App.4th at p. 474.)

B.  *"Arising From" Requirement*

We independently conclude from the record that the alleged defamatory statements made by Nelson constitute acts in furtherance of her right of free speech under subdivision (b)(1) of section 425.16, inasmuch as they satisfy the third statutory category of subdivision (e) of section 425.16 as they were made in a public forum and concerned issues of public interest.

This court in *Damon* decided a nearly identical issue to the case at bar.  There, the plaintiff—a former manager of a homeowners association—brought a defamation action against six association members who authored articles, editorials and letters to the editor that were critical of the plaintiff's management of the homeowners association; the publisher of a private association newsletter where they appeared; and two board of directors of the homeowners association who criticized the plaintiff and his management of the homeowners association and questioned his competency and veracity at board meetings.  (*Damon*, *supra*, 85 Cal.App.4th at pp. 472-473.)  The trial court granted the defendants' special motion to strike the plaintiff's defamation action, finding the suit arose from the defendants' exercise of free speech in connection with a public issue and the plaintiff could not show a probability of success on the merits because the alleged

7

defamatory statements "were privileged and/or nonactionable opinions." (*Id.* at p. 473.) This court affirmed.

We concluded in *Damon* that the alleged defamatory statements made by the defendants about the plaintiff were "made in a place open to the public or a public forum" as provided in subdivision (e)(3) of section 425.16, inasmuch as the defamatory statements were made both in board meetings of the homeowners association that were duly noticed and open to members of the homeowners association where members were entitled to speak publicly, and in a newsletter that was distributed to association members. (*Damon*, *supra*, 85 Cal.App.4th at pp. 474-475.) In addition, because the alleged defamatory statements "concerned the manner in which a large residential community would be governed," we further concluded they also satisfied the "'public interest'" requirement in subdivision (e)(3) of section 425.16. (*Damon*, at pp. 475-476.)

Here, the record shows the alleged defamatory statements made by Nelson were in response to a "message from the board" published in the December 2011 SLRH official newsletter that discussed the revitalization project as follows:

"Did you know that in 1985 our park did an upgrade on our electrical system? For those of you that don't know, we have our own master meter for electricity and gas, we own the meters, we then pay a company to read the meters and then we bill our park residents for the electricity and gas they use.

"The reason for the upgrade done in 1985 was to increase the power output from an RV Park to a 1985 Mobile Home Park. The cost of this project was approximately

8

$350,000.  We'll bet you don't know how this project was financed.  The residents of the park voted to assess themselves $1,000 per space and gave themselves one year to complete their payments.  In today's dollar value, this would be $2,081.57 per space . . . .

"At the present time, the cost estimate to bring the infrastructure of this park into the 21st century is 9.2 million dollars.  Our infrastructure is in a dangerous position as we are continually fixing gas leaks, and the gas lines run underneath the homes, they also do not meet state and local codes.  Our Fire Department told us that our water pressure at the present time is not enough to put out fires in our park and it has become very expensive to keep repairing our sewer problems.

"The board is committed to move this project forward, hopefully without any assessments to our residents.  We have put together a highly motivated team of homeowners who are committed to see this project completed.  This team of paid and volunteer homeowners have a vested interest in making this project successful, they have been doing a tremendous amount of research and work on this project, [and] they live here just as the rest of us do.

"If you have any questions or problems with this project, please contact Sam Rosen or Phil Hauser . . . .  They will be happy to meet with you and discuss your concerns.  And any of the board members will also be happy to answer your questions.  Please try and keep informed and aware of what is going on in the park.  You have a vested interest in its future and if you have any suggestions or ideas that can help move

9

this project forward, please share them with us, we want your support, [and] we only want what is best for our park. [¶] Board of Governors."

The record shows Nelson in February 2012 appeared at an official board meeting where she first made the alleged defamatory statements about Hauser and others[3] involved in the revitalization project. The record shows Nelson's statements, which were addressed to SLRH "owners/members," were "subsequently distributed verbatim to the entire community" by Hauser, among others, as were similar statements Nelson made at a board meeting in March 2012.

Following our decision in *Damon*, we conclude on this record that the alleged defamatory statements Nelson made at the two SLRH board meetings, and the subsequent republication (by Hauser) of those statements to the 327 SLRH owners/members after those meetings, satisfy the "public forum" requirement in subdivision (e)(3) of section 425.16. (See *Damon*, *supra*, 85 Cal.App.4th at pp. 474-475 [noting the board meetings of a homeowners association "serve[] a function similar to that of a governmental body" "where members [can] communicate their ideas" to the board and to other members].)

We also conclude the alleged defamatory statements made by Nelson concerned "issues of public interest" as provided in subdivision (e)(3) of section 425.16. "The

_____

3    Samuel Rosen separately sued Nelson for defamation based on the same alleged defamatory statements that are the subject of the instant case. (See *Rosen v. Nelson* (Super. Ct. San Diego County, 2012, No. 37-2012-00052830-CU-DF-NC).) The trial court in that action also granted Nelson's anti-SLAPP motion, which order we affirmed in its entirety due to a lack of an adequate appellate record. (See *Rosen v. Nelson* (July 25, 2013, D062501) [nonpub. opn.].)

10

definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity." (*Damon*, *supra*, 85 Cal.App.4th at p. 479 [noting that the alleged defamatory statements involved matters of "public interest" within the meaning of subdivision (e)(3) of section 425.16 because the defendants' statements concerned the decision whether the homeowners association should remain self-governed or be managed professionally and/or whether the plaintiff was competent to manage the association].)

Here, the record shows that Nelson made the alleged defamatory statements in connection with an issue of widespread concern to *all* SLRH owners/members *and* at the invitation of the SLRH board; that the proposed revitalization project could cost the SLRH community up to $9.2 million; that the board was considering ways to fund the project without assessing SLRH owners/members; that in the past SLRH owners/members had paid for utility improvements in the mobilehome park through assessments; that SLRH is a seniors-only mobilehome park and that Nelson, like many of its owners/members, lives on a fixed income; that Nelson disagreed with the board's decision to hire Hauser and others to head up the revitalization project, including its decision to pay Hauser for work that Nelson believed Hauser was not qualified to do; that Nelson questioned whether the board violated the SLRH bylaws when it hired Hauser and others to head up the revitalization project; and that Nelson was dissatisfied with the

11

answers/explanations she received from the board and its attorney regarding its handling of the revitalization project, including its decision to hire Hauser and others, the money it paid them and the expenses they incurred. We thus conclude on this record that Nelson's alleged defamatory statements concerned matters of "public interest" as provided in subdivision (e)(3) of section 425.16. (See *Damon*, *supra*, 85 Cal.App.4th at p. 479.)

Hauser, however, contends that the *Damon* case is distinguishable from the instant case and that Nelson therefore did not satisfy her burden to show the defamation claims "aris[e] from" protected activity within the meaning of subdivision (b)(1) of section 425.16. Specifically, he contends the alleged defamatory statements in *Damon* concerned only "political issues" and the governance of the homeowners association, whereas Nelson's statements in the instant case involved "direct and personal attacks to [his] character and professional experience" that he claims are "false." He also contends the alleged defamatory statements in *Damon* involved the elections of the board of the homeowners association and a recall campaign against the manager of that association, whereas the statements by Nelson in the instant case went to issues involving Hauser and his employment by the SLRH, which he further contends had nothing to do with a "governing objective." We reject these related contentions.

First, the alleged defamatory statements made by the defendants in *Damon* did not merely concern "political issues" and issues of governance, as Hauser contends. Instead, the defendants in *Damon* also made statements that were critical of the plaintiff,

12

including questioning his "competency and veracity" in managing the homeowners association. (See *Damon*, *supra*, 85 Cal.App.4th at pp. 472-473.)

Second, in both *Damon* and the case before us, the alleged defamatory statements were made by owners/members of a homeowners association during a duly noticed board meeting; were republished to owners/members of their respective associations; and involved issues affecting the entire association community. That some of the alleged defamatory statements in *Damon* were made in connection with the election of board members of the homeowners association, whereas the statements at issue in the instant case were made in connection with a project to revitalize an association's aging utility infrastructure, is a distinction without a difference as it relates to the "public interest" issue under subdivision (e)(3) of section 425.16.

Third, the truth or falsity (as the case may be) of Nelson's alleged "direct and personal attacks" against Hauser has no bearing whatsoever on whether Nelson in step one satisfied her burden under subdivision (b)(1) of section 425.16 to show Hauser's defamation claims "aris[e] from" protected speech. (See *Navellier v. Sletten* (2002) 29 Cal.4th 82, 94 [noting that "any 'claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise *and* support in the context of the discharge of the plaintiff's [secondary] burden to provide a prima facie showing of the merits of the plaintiff's case'" and noting that such an argument "'confuses the threshold question of whether the SLAPP statute [potentially] applies with the question whether [an opposing plaintiff] has established a probability of success on the merits'"].)

13

Indeed, the first step of the anti-SLAPP statute focuses on the defendant's activity that gives rise to the injury-producing conduct, as opposed to the "unlawful motive the plaintiff is ascribing to that conduct."  (See *Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257, 271 [noting that it is "easy to confuse" these two concepts and that "[t]his confusion will be less likely to occur . . . if on the first step of the anti-SLAPP inquiry the court's focus remains squarely on the defendant's activity that gave rise to [the defendant's] asserted liability, and whether that activity constitutes protected speech or petitioning, rather than on any motive the plaintiff may be ascribing to the activity"].)

In sum, in reviewing the operative complaint, we independently conclude the "principal thrust or gravamen" (see *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188) of Hauser's defamation claims against Nelson involve protected speech within the meaning of subdivision (e)(3) of section 425.16 and thus are subject to the anti-SLAPP statute.[4]  (See *Damon*, *supra*, 85 Cal.App.4th at pp. 474-475.)

C. *Probability of Success on the Merits*

Because we conclude Nelson made a prima facie showing that Hauser's defamation claims arose from protected activity within the meaning of the anti-SLAPP statute, the burden then shifted to Hauser to provide sufficient evidence to demonstrate a probability of prevailing on the merits of his claims.  (See § 425.16, subd. (b)(1); see also *Kleveland*, *supra*, 215 Cal.App.4th at p. 548.)  In making this showing, Hauser may not

[4]    In light of our decision, we deem it unnecessary to decide whether Nelson's alleged defamatory statements come within any other category of subdivision (e) of section 425.16, including subdivision (e)(4) of section 425.16 which, unlike subdivision (e)(3), does not include a public forum requirement.

14

rely on the allegations in the complaint (see *Nagel v. Twin Laboratories, Inc.* (2003) 109 Cal.App.4th 39, 45) or evidence that would not be admissible at trial (see *Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1346).

Defamation can be of two types: libel or slander. (Civ. Code, § 44.) Libel is defined in Civil Code section 45[5] and slander in Civil Code section 46.[6] The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720; see also *Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 470.)

We independently conclude Hauser did not satisfy his burden to show a probability of success on the merits of his defamation claims. In an effort to make this showing, Hauser lodged nine exhibits in the trial court. We note that much of the "evidence" contained in these exhibits is inadmissible as presented and therefore cannot

---

[5] This statute provides: "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."

[6] This statute provides: "Slander is a false and unprivileged publication, orally uttered . . . which: [¶] 1. Charges any person with crime, or with having been indicted, convicted, or punished for crime; [¶] 2. Imputes in him the present existence of an infectious, contagious, or loathsome disease; [¶] 3. Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits; [¶] 4. Imputes to him impotence or a want of chastity; or [¶] 5. Which, by natural consequence, causes actual damage."

15

be considered in determining whether Hauser satisfied his burden under the anti-SLAPP statute. (See *Hall v. Time Warner, Inc.*, *supra*, 153 Cal.App.4th at p. 1346.)

In addition, it appears Hauser lodged these exhibits to show that the revitalization project is a good thing for the SLRH community and that Nelson is improperly interfering with that project, to the detriment of *all* other SLRH owners/members who will have to pay for these improvements absent grant money. However, whether the SLRH revitalization project is good or bad for the SLRH community has no bearing whatsoever on Hauser's defamation claims against Nelson.

Turning to the exhibits, exhibit 1 attempts to explain the "[r]easons for [m]alice and [s]tatements of [m]alice" by Nelson against Hauser. It states Nelson allegedly engaged in a campaign of harassment against an SLRH board member (not Hauser) after this member allegedly was elected to the board in lieu of Nelson. It also mentions Nelson's alleged failed lawsuit against a different board member two years earlier; her alleged refusal to change the date of the board's annual appreciation dinner that she was overseeing, which allegedly is the "most lavish" board event of the year; her criticism of the revitalization project; his view that "it is virtually impossible to find anyone with utility infrastructure engineering experience to work for $15 an hour" as he was being paid by the board; and his opinion that Nelson should not be allowed to "ridicule" the board for its decision to pay for his time and expenses in obtaining a certification in grant writing because Nelson allegedly "has not demonstrated an appropriate amount of research" on this issue.

16

This "evidence" in exhibit 1 is inadmissible as it is neither supported by properly authenticated documents nor sworn testimony. In addition, even if admissible, the "evidence" provides no support for Hauser's defamation claims and his corresponding burden under the anti-SLAPP statute to show a probability of success on the merits of those claims.

Exhibit 2, lodged by Hauser, discusses his alleged damages as a result of Nelson's conduct in appearing at the board meetings to criticize and oppose the revitalization project. Exhibit 2 generally states Hauser lost about $1,760 per month for six months because Rosen was unable to convince the board to give Hauser a "much deserved" $10 per hour pay increase because the board allegedly was "intimidated" by Nelson. Exhibit 2 also states that if Nelson is successful in convincing the board to terminate the revitalization project, the only source of funding allegedly available to replace the community's aging infrastructure would be an assessment of each individual homeowner in an amount between $30,000 and $38,000 which, in turn, would create a hardship for Hauser and for many other SLRH owners/members (ostensibly including Nelson). Again, these general statements as presented are inadmissible and, in any event, are irrelevant to Hauser's defamation claims against Nelson.

Unlike exhibits 1 and 2, exhibit 3 is in the form of declaration signed under penalty of perjury. In exhibit 3, Rosen states that in early March 2012 he approached the board and recommended it give Hauser the $10 per hour pay raise identified in exhibit 2 for Hauser's work on the revitalization project. Rosen further states the board refused to

17

give Hauser this raise because of Nelson's criticism of the revitalization project at the March 2012 board meeting.

However, exhibit 3 suffers the same fate as exhibits 1 and 2 as Rosen's statements regarding the board's alleged refusal to give Hauser a pay raise, and the reasons for its refusal (i.e., Nelson's criticism of the revitalization project), are inadmissible (i.e., hearsay). In addition, these statements have no relevance to Hauser's defamation claims, as they concern the board, not Hauser.

Exhibit 4 discuses the alleged benefits of the revitalization project. Like the "evidence" in exhibits 1, 2 and 3, the "evidence" in exhibit 4 is inadmissible as presented. Moreover, as noted *ante*, whether the revitalization project is good or bad for the SLRH community has no bearing on Hauser's defamation claims against Nelson.

Exhibit 5 provides a "response" by Hauser to the decision of the trial court in the *Rosen* action (see fn. 3, *ante*) to grant Nelson's anti-SLAPP motion. This response again has no bearing on Hauser's defamation claims.

Exhibit 6 is likewise irrelevant to Hauser's defamation claims. Much of exhibit 6 involves a legal discussion of the *Damon* case and why that case allegedly is distinguishable from the instant case. Exhibit 6 also contains inadmissible statements regarding the source of the proposed funding for the SLRH revitalization project. Clearly, this discussion and these statements have nothing to do with Hauser's defamation claims and whether Hauser satisfied his burden under the anti-SLAPP statute.

18

Exhibit 7 includes the alleged defamatory statements Nelson made at the February and March 2012 board meetings in connection with the revitalization project and involves the subsequent republication of those statements.

Exhibit 8 is a copy of Nelson's objections to 25 specially-prepared interrogatories propounded by Hauser. Exhibit 8 does not support Hauser's defamation claims or the requirement in the anti-SLAPP statute that he show a probability of success on those claims.

Although Hauser failed to produce sufficient *admissible* evidence of the essential elements of his defamation claims, even if we assume otherwise, we would still conclude those claims fail based on the common interest privilege codified in Civil Code section 47. This statute provides in part: "A privileged publication . . . is one made . . . [¶] . . . [¶] (c) [i]n a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information."

Here, the record shows that the alleged defamatory comments by Nelson were directed to the board and not to Hauser; that they were made in connection with a duly noticed board meeting and at the invitation of the board (as noted *ante*); and that they were made to SLRH owners/members who had a vested interest in the revitalization

19

project (again, as noted *ante*).  As such, we conclude Nelson's comments were between interested parties and thus qualifiedly privileged.  (See Civ. Code, § 47, subd. (c).)

Because a prima facie case for qualified privilege was established, the burden shifted to Hauser to show malice existed at the time the alleged defamatory comments were published by Nelson.  (See *Katz v. Rosen* (1975) 48 Cal.App.3d 1032, 1037.) """The malice necessary to defeat a qualified privilege is 'actual malice' which is established by a showing the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights [citations]."""  (*Noel v. River Hills Wilsons, Inc.* (2003) 113 Cal.App.4th 1363, 1370.) Malice in such circumstances "is not inferred from the communication."  (Civ. Code, § 48; see also *Noel v. River Hills Wilsons, Inc.*, *supra*, at p. 1370.)

As we noted *ante*, all of the alleged defamatory comments by Nelson were addressed to the board, as opposed to Hauser individually, and were the result of her "good faith belief" that the board and certain SLRH owners/members were improperly managing the revitalization project.  Under such circumstances, we conclude Hauser cannot make the requisite prima facie showing of malice to defeat the common-interest privilege.

In addition, we conclude that most if not all of the alleged defamatory comments by Nelson were based on her opinion that the board was mishandling the revitalization project.  As such, for this separate and independent reason, we conclude Hauser cannot

20

satisfy his burden to show a probability of success on the merits of his defamation claims. (See *Melaleuca, Inc. v. Clark* (1998) 66 Cal.App.4th 1344, 1353-1354 [noting that an essential element of libel is the publication must contain a false statement of fact and noting that statements of opinion are not actionable].)

Finally, with respect to Nelson's statement at the March 2012 board meeting that the revitalization project "may possibly" constitute financial elder abuse, we conclude this statement also was merely an opinion by Nelson (see *Melaleuca, Inc. v. Clark*, *supra*, 66 Cal.App.4th at pp. 1353-1354); it was not directed at Hauser but to the board generally; it was, in any event, conditional; and, at a minimum, was qualifiedly privileged as it involved an issue of public interest among the SLRH owners/members. (See Civ. Code, § 47, subd. (c).)

DISPOSITION

The trial court's order granting Nelson's anti-SLAPP motion to strike Hauser's defamation claims is affirmed.

BENKE, Acting P. J.

WE CONCUR:

HUFFMAN, J.

HALLER, J.