[No. B192371. Second Dist., Div. Three. Aug. 2, 2007.]

BLANCHE HALL, Plaintiff and Respondent, v.
TIME WARNER, INC., et al., Defendants and Appellants.

1340

COUNSEL

White O'Connor Curry, Michael J. O'Connor, David E. Fink and Amanda M. Leith for Defendants and Appellants.

Law Offices of Bruce Altschuld and Bruce Altschuld for Plaintiff and Respondent.

## Opinion

**CROSKEY, Acting P. J.**—Blanche Hall was Marlon Brando's housekeeper many years ago. Brando's will was filed in probate after his death in July 2004. The will revealed that Brando had named Hall as a beneficiary in his living trust. A reporter for the producers of *Celebrity Justice,* a nationally broadcast television program, visited Hall in her room in a retirement home, interviewed her, and portions of the interview were televised. She sued the producers for trespass, intrusion upon seclusion, public disclosure of private facts, intentional infliction of emotional distress, and elder abuse. The trial court denied defendants' special motion to strike the complaint (Code Civ. Proc., § 425.16)[1] because it concluded that the complaint did not arise from an act in furtherance of defendants' right of petition or free speech *in connection with a public issue.*

We conclude otherwise. The terms of Brando's will and living trust *were* an issue of widespread public interest, and the complaint arises from conduct by defendants in furtherance of their right of free speech in connection with that public issue. The trial court's conclusion to the contrary was error. Because the court did not reach or decide the question whether Hall had established a probability of prevailing on the counts alleged in her complaint or rule on objections to evidence presented by the parties with respect to that question, we will reverse the order and remand the matter with directions to decide those matters in the first instance. Finally, we reject Hall's argument that defendants' failure to schedule the motion for a hearing within 30 days after the motion was served mandated the denial of the motion.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Factual Background*

Brando was a well-known actor, first on stage and later in motion pictures. He won Academy Awards for his performances in On the Waterfront (Columbia Pictures 1954) and The Godfather (Paramount Pictures 1972) and appeared in numerous other films. He was often in the public eye for his exploits on and off the screen and his at times tumultuous private life. Brando died on July 1, 2004, at the age of 80. His obituary appeared on the first page of major newspapers, including the New York Times, Los Angeles Times, and International Herald Tribune.

---

[1] Unless otherwise stated, all further statutory references are to the Code of Civil Procedure.

A petition for probate of Brando's will was filed in the Los Angeles Superior Court on July 9, 2004, together with a copy of the will. The will identified 10 living children, including an adopted daughter, and one deceased daughter. The will stated that Brando intentionally did not provide for either his adopted daughter or the issue of his predeceased daughter in his will or living trust, and disinherited those heirs. The pour-over provisions of the will stated that his living trust provided for monthly payments to Hall and another individual who also was not a Brando family member. The petition for probate stated that Brando's relationship with Hall and the other individual was as friends and listed Hall's address at a retirement home in Los Angeles. Various newspapers and other publications published the details of the will in the days that followed and specifically identified Hall as a beneficiary.

Time Warner, Inc., TTT West Coast, Inc., Time Telepictures Television, and Harvey Levin Productions, Inc. (defendants), produced the nationally broadcast television program *Celebrity Justice*, which reported on legal proceedings involving well-known individuals. They obtained a copy of Brando's will from the court file and assigned a reporter, Joe Tobin, to interview Hall. Tobin visited the retirement home on July 12, 2004. He approached the reception desk in the lobby and asked to see Hall. The receptionist directed him to a building across the street, which was part of the retirement home. Tobin entered the second building, approached a worker, and asked to see Hall. She asked Tobin who he was. The parties dispute his response. The worker then led Tobin to Hall's room.

Hall was Brando's housekeeper from approximately 1963 until some unspecified date. She was 82 years old at the time of the interview and had been suffering from dementia and Alzheimer's disease for several years. Her sister had informed her of Brando's death on several occasions before the interview. Hall was dressed and sitting on the bed with the television on when Tobin entered her room. She stated, "I don't know you." Tobin stated that he was a reporter and was doing a story on Brando. When he mentioned Brando's death, Hall responded with surprise. Tobin stated that Hall was named as a beneficiary in Brando's will, and Hall responded that she was not aware of that. Tobin maintains that Hall consented to an on-camera interview.[2] Tobin asked her some questions and recorded the interview using a video recorder. Part of the interview was broadcast on *Celebrity Justice* that evening in a segment lasting approximately three minutes.

---

[2] Defendants objected to Tobin's declaration on this and other points.

Hall filed a complaint against the corporate owner of the retirement home in July 2005, alleging that it failed to provide adequate security for its residents, failed to protect her from an unwanted intrusion by defendants, and provided deficient care and supervision. She alleged that defendants' reporters "exploited the non-existent security features of the . . . facility and thereby gained easy access to Ms. Hall," and that the reporters "purposefully and viciously awakened, intimidated, and illegally obtained audio-tape and video-tape of [Hall]." She alleged counts for breach of contract, fraud, negligence, intentional and negligent infliction of emotional distress, unfair business practices, and elder abuse under both the Elder Abuse and Dependent Adult Civil Protection Act (Elder Abuse Act) (Welf. & Inst. Code, § 15600 et seq.) and Penal Code section 368, subdivision (c). The complaint apparently was dismissed with prejudice in January 2006.

Hall also filed a complaint against Time Warner, Inc., in the United States District Court for the Central District of California in July 2005. She alleged counts for trespass, intrusion upon seclusion, public disclosure of private facts, intentional infliction of emotional distress, and elder abuse under the Elder Abuse Act. She later dismissed that complaint and then commenced the present action in the trial court below.

### 2. Trial Court Proceedings

Hall filed her complaint in the present action in November 2005, alleging counts for trespass, intrusion upon seclusion, public disclosure of private facts, intentional infliction of emotional distress, and elder abuse under the Elder Abuse Act. She alleges that the retirement home "maintains the contractually required rigorous supervisory safety procedures and security measures to keep its patients safe and to protect the patients from outsiders." She also alleges that the retirement home maintained a closed-circuit television monitoring system and required guests to sign in before visiting residents. Hall alleges that defendants' reporters intentionally circumvented the security measures and sign-in procedure and informed the staff who confronted them in the hallway that they were her family relatives. She alleges that the reporters "took their cameras clandestinely beyond the staff that they had just defrauded," "burst into Blanche Hall's room," "aroused Mrs. Hall[,] told her the news of Marlon Brando's death[, and] then recorded her virtually incoherent response." Hall alleges that the reporters "ambushed and awakened" her, "harassed, provoked, and intimidated" her, and "bombarded [her] with questions about her financial interest as a named beneficiary in the Brando Will."

Defendants filed a special motion to strike the complaint under the anti-SLAPP (strategic lawsuit against public participation) statute (§ 425.16) in April 2006. They argued that their news gathering and reporting were acts in furtherance of their constitutional right of free speech and that Hall could not demonstrate a probability of prevailing on her counts against them. They filed declarations by Tobin and Levin describing the events surrounding the interview and submitted additional evidence of Brando's fame and notoriety and publicity concerning his will.

Hall argued in opposition that defendants' conduct was tortious, that the interview was not newsworthy, and that Hall had no capacity to consent to the interview. She did not cite or discuss the requirement that a cause of action subject to the anti-SLAPP statute must arise from an act in furtherance of the defendant's right of petition or free speech in connection with a public issue (§ 425.16, subd. (b)(1)). She filed declarations by her sister, a worker at the retirement home, and a physician. She also filed objections to the declarations by Tobin and Levin. Defendants filed objections to Hall's declarations.

The trial court concluded that defendants had failed to satisfy their predicate burden to show that Hall's complaint arose from an act in furtherance of their right of petition or free speech *"in connection with a public issue"* (§ 425.16, subd. (b)(1), italics added). The court stated in its order, filed on June 8, 2006, that although Brando was a public figure, Hall was neither a public figure nor a limited purpose public figure and did not become a public figure by virtue of her association with Brando's will. The court stated that the media reports submitted by defendants mentioning Hall in connection with the will did not disclose "any real degree of public interest in Ms. Hall or her relationship to Mr. Brando. [Fn. omitted.]" The court therefore denied the special motion to strike, without reaching or ruling on the evidentiary objections or deciding whether Hall had demonstrated a probability of prevailing on her complaint. Defendants timely appealed the order.

## CONTENTIONS

Defendants contend (1) Brando's decisions regarding the disposition of his assets after his death were issues of public interest within the meaning of the anti-SLAPP statute; (2) Hall consented to the interview in her room, so defendants cannot be liable for either trespass or intrusion upon seclusion;

(3) defendants cannot be liable for intrusion upon seclusion because their manner of entry into the room was not highly offensive to a reasonable person; (4) defendants cannot be liable for public disclosure of private facts because they disclosed no private facts, the information disclosed was neither offensive nor objectionable, and the information was newsworthy; (5) defendants cannot be liable for intentional infliction of emotional distress because their conduct was not extreme and outrageous, and there is no evidence that they intended to cause injury; and (6) defendants cannot be liable under the Elder Abuse Act because they had no duty of care toward Hall, and their conduct was not "abuse of an elder" within the meaning of the act.

Hall disputes each of those contentions and argues that the trial court was required to deny the special motion to strike because the motion was not scheduled for a hearing within 30 days after the date the motion was served.

## DISCUSSION

### 1. The Anti-SLAPP Statute

█ The anti-SLAPP statute states that a cause of action shall be subject to a special motion to strike if (1) the cause of action arises from an act in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue, and (2) the plaintiff is unable to establish a probability of prevailing on the merits of the claim. (§ 425.16, subd. (b)(1).) The purpose of the statute is to encourage participation in matters of public significance and prevent meritless litigation designed to chill the exercise of First Amendment rights. (§ 425.16, subd. (a).) The Legislature has declared that the statute must be "construed broadly" to that end. (*Ibid.*)

█ A defendant moving to strike a cause of action under the anti-SLAPP statute must show that the cause of action "aris[es] from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue" (§ 425.16, subd. (b)(1)). (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) If the defendant makes that showing, the plaintiff must establish a probability of prevailing on the merits of the claim in order to avoid dismissal. (§ 425.16, subd. (b)(1); *Equilon, supra,* at p. 63.) On appeal, we independently determine whether the challenged cause of action arises from the defendant's exercise of the

constitutional right of petition or free speech and whether the plaintiff has demonstrated a probability of prevailing on the merits of the claim. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055 [39 Cal.Rptr.3d 516, 128 P.3d 713]; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999 [113 Cal.Rptr.2d 625].)

 To demonstrate a probability of prevailing on the merits, the plaintiff must show that the complaint is legally sufficient and must present a prima facie showing of facts that, if believed by the trier of fact, would support a judgment in the plaintiff's favor. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 713–714 [54 Cal.Rptr.3d 775, 151 P.3d 1185]; *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733].) The plaintiff's showing of facts must consist of evidence that would be admissible at trial. (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212 [12 Cal.Rptr.3d 786].) The court cannot weigh the evidence, but must determine whether the evidence is sufficient to support a judgment in the plaintiff's favor as a matter of law, as on a motion for summary judgment. (*Wilson, supra*, at p. 821; *Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 907 [84 Cal.Rptr.2d 303]; see *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192 [25 Cal.Rptr.3d 298, 106 P.3d 958].) If the plaintiff presents a sufficient prima facie showing of facts, the moving defendant can defeat the plaintiff's evidentiary showing only if the defendant's evidence establishes as a matter of law that the plaintiff cannot prevail. (*Wilson, supra*, at p. 821.)

### 2. *The Complaint Arises from an Act in Furtherance of Defendants' Right of Free Speech*

 A cause of action "aris[es] from" protected activity within the meaning of section 425.16, subdivision (b)(1) only if the defendant's act underlying the cause of action, and on which the cause of action is based, was an act in furtherance of the defendant's right of petition or free speech in connection with a public issue. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695]; *ComputerXpress, Inc. v. Jackson, supra*, 93 Cal.App.4th at p. 1001.) Defendants' acts on which the counts alleged in the complaint are based were the acts of entering Hall's private room, interviewing her on camera, and broadcasting the interview on national television. Those acts arose from protected activity for purposes of the anti-SLAPP statute only if the acts were in furtherance of defendants' right of petition or free speech in connection with a public issue.

Section 425.16, subdivision (e) describes four categories of conduct that constitute an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' " within the meaning of subdivision (b)(1): "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

A statement or other conduct is "in connection with an issue of public interest" (§ 425.16, subd. (e)(3)) or "in connection with a public issue or an issue of public interest" (*id.* (e)(4)) if the statement or conduct concerns a topic of widespread public interest and contributes in some manner to a public discussion of the topic. (*Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 898 [17 Cal.Rptr.3d 497].) The public's fascination with Brando and widespread public interest in his personal life made Brando's decisions concerning the distribution of his assets a public issue or an issue of public interest. Although Hall was a private person and may not have voluntarily sought publicity or to comment publicly on Brando's will, she nevertheless became involved in an issue of public interest by virtue of being named in Brando's will. Defendants' television broadcast contributed to the public discussion of the issue by identifying Hall as a beneficiary and showing her on camera. We conclude that the acts from which the complaint arises, specified *ante*, constituted conduct in furtherance of defendants' right of free speech "in connection with a public issue or an issue of public interest" (§ 425.16, subd. (e)(4)).

The trial court concluded that the complaint did not arise from an act in furtherance of defendants' right of petition or free speech and therefore did not decide whether Hall had demonstrated a probability of prevailing on the merits of her complaint or rule on the parties' evidentiary objections. Rulings on the evidentiary objections are necessary before the trial court or this court

can determine whether Hall has presented admissible evidence that demonstrates a probability of prevailing on the merits of her claims. Rulings on evidentiary objections involve an exercise of discretion, and it is the trial court's responsibility to rule on the objections in the first instance.[3] (Cf. *Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1217–1218 [35 Cal.Rptr.3d 411] [summary judgment motion]; *Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 235–236 [114 Cal.Rptr.2d 151] [same]; but see *Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 656 [24 Cal.Rptr.3d 619] [stated that because the ruling on a special motion to strike is reviewed de novo, the reviewing court should rule on evidentiary objections in the first instance in order to avoid further delay].) Although the trial court's failure to rule on the objections is understandable in light of its conclusion, the trial court on remand must rule on the evidentiary objections and then decide whether Hall has demonstrated a probability of prevailing on the merits of her claims. (Cf. *Parkview Villas Assn., supra*, at pp. 1217–1218.)

### 3. *The Court Was Not Required to Deny the Motion Based on the Scheduling of the Hearing*

Hall contends the trial court was required to deny the special motion to strike because defendants failed to schedule a hearing on the motion for a date within 30 days after the service of the motion.[4] We disagree.

Former section 425.16, subdivision (f) stated: "The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper. The motion *shall be noticed for hearing* not more than 30 days after service unless the docket conditions of the court require a later hearing." (Stats. 1999, ch. 960, § 1, italics added.) *Decker v. U.D. Registry, Inc.* (2003) 105 Cal.App.4th 1382,

---

[3] Just as we independently determine whether there is a triable issue of material fact in reviewing the ruling on a summary judgment motion, but review a ruling on an evidentiary objection in connection with a summary judgment motion for abuse of discretion (*Mitchell v. United National Ins. Co.* (2005) 127 Cal.App.4th 457, 467 [25 Cal.Rptr.3d 627]), we independently determine whether a cause of action arises from the defendant's exercise of the right of petition or free speech and whether the plaintiff has demonstrated a probability of prevailing on the merits, but review a ruling on an evidentiary objection in connection with a special motion to strike for abuse of discretion. (*Morrow v. Los Angeles Unified School Dist.* (2007) 149 Cal.App.4th 1424, 1440, 1444 [57 Cal.Rptr.3d 885].)

[4] A respondent may request review of the appealed decision and any intermediate ruling that involves the merits, necessarily affects the appealed order or judgment, or substantially affects the rights of a party, for the purpose of determining whether the appellant was prejudiced by the error asserted by the appellant. (§ 906.)

1387–1390 [129 Cal.Rptr.2d 892] held that the statutory requirement of a timely noticed hearing was mandatory and that the trial court must deny a special motion to strike that was noticed for a hearing more than 30 days after service of the motion, absent a showing that the court's docket conditions necessitated the later hearing date. *Fair Political Practices Com. v. American Civil Rights Coalition, Inc.* (2004) 121 Cal.App.4th 1171, 1174–1178 [18 Cal.Rptr.3d 157], cited by Hall, followed the holding in *Decker. Greka Integrated, Inc. v. Lowrey* (2005) 133 Cal.App.4th 1572, 1577–1578 [35 Cal.Rptr.3d 684], also cited by Hall, cited the rule from *Decker* and *Fair Political Practices Com.*, but held that the plaintiff waived the right to object to the late hearing date by expressly consenting to the hearing date.

The Legislature amended section 425.16, subdivision (f) on October 5, 2005, as an urgency statute effective immediately on that date. (Stats. 2005, ch. 535, §§ 1, 4.) Subdivision (f), as amended, states: "The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper. The motion *shall be scheduled by the clerk of the court for a hearing* not more than 30 days after the service of the motion unless the docket conditions of the court require a later hearing." (Italics added.) An uncodified section of the statute states: "It is the intent of the Legislature, in amending subdivision (f) of Section 425.16 of the Code of Civil Procedure, to overrule the decisions in Decker v. U.D. Registry, Inc. (2003) 105 Cal.App.4th 1382, 1387–1390 [129 Cal.Rptr.2d 892], and Fair Political Practices Commission v. American Civil Rights Coalition, Inc. (2004) 121 Cal.App.4th 1171, 1174–1178 [18 Cal.Rptr.3d 157]."[5] (Stats. 2005, ch. 535, § 3.)

█ Thus, the Legislature expressly abrogated the rule on which Hall relies. Section 425.16, subdivision (f), as amended, requires the court clerk to schedule a special motion to strike for a hearing no more than 30 days after the motion is served if such a hearing date is available on the court's docket, but does not require the moving party to ensure that the hearing is so scheduled and does not justify the denial of a special motion to strike solely because the motion was not scheduled for a hearing within 30 days after the motion was served. Accordingly, we cannot affirm the order on that basis.

---

[5] *Greka Integrated, Inc. v. Lowrey*, *supra*, 133 Cal.App.4th 1572, was filed on November 15, 2005, after the 2005 amendments to section 425.16, subdivision (f) became effective. *Greka* neither mentioned the statutory amendments nor explained why the amendments did not apply in that action. In any event, *Greka* concluded that the plaintiff waived any objection to the hearing date and therefore did not hold that the trial court should have denied the special motion to strike.

## *DISPOSITION*

The order is reversed with directions to the trial court to rule on the parties' evidentiary objections, decide whether Hall has demonstrated a probability of prevailing on each count alleged in her complaint, and enter a new order ruling on the special motion to strike. Defendants are entitled to recover costs on appeal.

Kitching, J., and Aldrich, J., concurred.

Respondent's petition for review by the Supreme Court was denied October 31, 2007, S156332. Corrigan, J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.