Filed 1/23/14  Lau v. Lee CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DIANA LAU,<br><br>　　　　Cross-complainant and Respondent,<br><br>v.<br><br>ANITA LEE,<br><br>　　　　Cross-defendant and Appellant. | A137557<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-12-523025) |

Appellant Anita Lee appeals from the trial court's order granting in part and denying in part her special motion to strike respondent Diana Lau's cross-complaint under Code of Civil Procedure[1] section 425.16.  Section 425.16 sets out a procedure for striking complaints in lawsuits that are commonly known as "SLAPP" suits (strategic lawsuits against public participation).  The trial court found the cross-complaint did arise out of appellant's protected expressive activity.  However, the court denied the motion as to two of respondent's causes of action, finding that respondent had sufficiently demonstrated a probability of prevailing on the merits.  We affirm.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**I.** *Background Leading to Initial Litigation Involving the Parties*

As alleged in a complaint filed by appellant in November 2009, appellant and Edith Wong entered into an oral agreement in November 2007 whereby appellant agreed to lend $30,000 to Wong as a personal loan.  Wong agreed to repay the entire loan with

---

[1] All statutory references are to the Code of Civil Procedure.

interest no later than November 8, 2008. By the time the complaint was filed, Wong had repaid only $2,500.

On October 22, 2008, appellant entered into an agreement to purchase a property in San Francisco that Wong owned. She provided $10,000 as a deposit for the purchase. As part of the purchase agreement, appellant agreed to loan an additional $80,000 to Wong. The agreement provided that if escrow did not close on January 31, 2009, Wong would repay this second loan. A deed of trust against the property securing the $80,000 was thereafter recorded. Wong agreed to complete repair work on the property before closing to enable appellant to obtain financing to complete the deal.

On December 10, 2008, appellant discovered the property was subject to a foreclosure sale notice on a second deed of trust.

On December 31, 2008, yet another deed of trust was recorded on Wong's property. The trustee of that deed was respondent. Respondent had loaned money to Wong, which was used to pay off the second deed of trust. In return, respondent received a $300,000 note secured by a deed of trust on the property.

On January 20, 2009, appellant cancelled her purchase agreement because Wong had not undertaken the repair work. Appellant demanded release of the $10,000 deposit. She also demanded payment of the $27,500 that remained owing on the $30,000 loan, with interest, as well as repayment of the $80,000 loan.

On August 7, 2009, a trustee's sale was held and the property was sold for $240,000 to respondent, who had foreclosed on her deed of trust. Wong never responded to appellant's demands.

## II. *Appellant Files Her First Complaint Against Respondent*

On November 9, 2009, appellant filed her complaint against Edith Wong and respondent (hereafter the Wong action). As part of the lawsuit, appellant filed a lis pendens against the property. The complaint's sole cause of action against respondent was for judicial foreclosure. Appellant asserted she was entitled to enforce her security interest under her deed of trust by judicial foreclosure because respondent purchased the

2

property subject to a promissory note on which Wong had defaulted. Wong was sued for breach of contract and fraud. Respondent reportedly never appeared in the lawsuit.

**III.** *The Parties' Attempts to Settle*

After the Wong action was filed, the parties negotiated two agreements to attempt to settle appellant's claim against respondent. The first agreement was signed on November 27, 2009, and provided respondent would pay appellant $80,000, with interest, by December 31, 2010. In return, appellant would dismiss respondent and the causes of action for judicial foreclosure and the lis pendens from the case. Appellant's counsel subsequently told respondent that the agreement was null and void. While respondent reportedly paid $3,400 to appellant, and appellant retained these funds, appellant did not dismiss the foreclosure claim.

Subsequently, respondent presented another agreement to try to resolve the parties' issues. Appellant signed this agreement on March 4, 2011. This agreement provides that appellant would release respondent from all claims except as to the $80,000 deed of trust. She agreed to dismiss respondent from the complaint with prejudice. Respondent agreed to pay appellant $80,000 with interest, but "only in the event where [appellant] does not recover and collect these amounts from [Wong]." If that contingency was satisfied, respondent would pay $1,000 per month to appellant, with any remaining balance to be paid off by December 31, 2013. Subsequently, appellant's attorney reportedly indicated this signed agreement was also null and void.

On March 25, 2011, appellant asked respondent to help her to prove Wong was fraudulent in her dealing with appellant. Respondent said she would help if appellant would dismiss the foreclosure allegation against her and release the lien on the property. For this assistance, respondent would testify that Wong defrauded appellant.

As of May 2, 2011, respondent was still a party in the case. Appellant's attorney reportedly had left several voice mail messages for respondent, threatening to sue her unless she signed a new agreement.

On May 3, 2011, appellant's attorney called respondent and told her the trial court had ordered appellant to select her remedy in the action. She could either go forward

3

with the judicial foreclosure action and release Wong from the $80,000 loan, or continue to pursue her claim against Wong. Appellant decided to maintain the action against Wong, and dismissed respondent from the suit without prejudice. The dismissal was filed on May 4, 2011.

Respondent testified in the Wong action on May 11, 2011. Subsequently appellant prevailed in her lawsuit against Wong, reportedly obtaining a jury award of $114,500 that included the original $80,000 loan. The total judgment entered on May 31, 2011 included attorney fees and a stipulated award of $27,500 with interest. Appellant did not withdraw the lis pendens after the judgment.

On February 1, 2012, appellant's counsel sent respondent a letter demanding payment of the same $80,000 that respondent believed appellant had already been awarded in the judgment against Wong. In the letter, he claimed the judgment had excluded the $80,000.

## IV. *Appellant Files a Second Complaint Against Respondent*

On August 7, 2012, appellant filed a new complaint against respondent for judicial foreclosure and breach of contract. The complaint alleges that appellant had made a loan of $80,000 to respondent's predecessor in interest, Wong. A deed of trust had been recorded against the property reflecting the loan. The property was later sold to respondent for $240,000. The complaint alleges respondent had acknowledged the deed of trust and had defaulted on the promissory note. Appellant asserted her right to enforce her security interest by judicial foreclosure. The second cause of action for breach of contract asserts respondent breached the March 4, 2011 written contract in which she had acknowledged the note and deed of trust and had agreed to pay appellant under a payment plan.

## V. *The Cross-complaint and Anti-SLAPP Motion*

On September 27, 2012, respondent filed a cross-complaint against appellant asserting causes of action for (1) breach of contract, (2) promissory fraud, (3) fraud, (4) defamation, (5) declaratory relief, and (6) slander of title. The cause of action for breach of contract is based on the allegation that the parties entered into an oral

4

agreement whereby "[respondent] would support [appellant] with information, advice and testimony in [appellant's] lawsuit against [Wong], . . . in return for which [appellant] would refrain from foreclosing on and release her deed of trust against the subject property, to which [respondent] had acquired title." These allegations are reiterated in the second cause of action for false promise: "[Appellant] stated that in exchange for [respondent's] help in [the Wong action], [appellant] would release and refrain from enforcing or otherwise attempting to collect on the Trust Deed referred to in the Complaint herein."

On October 26, 2012, appellant filed a motion under section 425.16 to strike five of the six causes of action in respondent's cross-complaint.

## VI. *Trial Court's Ruling on Anti-SLAPP Motion*

The trial court granted the anti-SLAPP motion as to two causes of action and denied it as to the first cause of action for breach of contract and the second and third causes of action for fraud.[2] The court found the claims were subject to section 425.16 as they are based upon alleged agreements and statements made in connection with the earlier lawsuit involving the parties. In particular, these causes of action explicitly reference the prior case. The court also found, however, that respondent had met her burden to establish a probability of prevailing on the merits of her breach of contract and fraud causes of action.

The trial court noted appellant initiated her lawsuit against respondent for judicial foreclosure and breach of contract based on the allegation that respondent had breached the March 4, 2011 agreement.[3] Declarations submitted by respondent showed that the parties had entered into various agreements regarding the property and deed of trust at issue, not just the March 2011 agreement. Respondent had offered sufficient evidence to demonstrate a probability of prevailing on her claim that appellant is breaching her

---

[2] Appellant has elected to abandon her appeal of the trial court's ruling as to the third cause of action.

[3] The trial court, apparently erroneously, identifies the document as having been dated March 5, 2010.

agreement by bringing her lawsuit,[4] and that she had made a promise without an intent to perform. In light of all of the evidence, the court found appellant's references to portions of respondent's testimony in the Wong action "are inconclusive and don't preclude a finding that [respondent] has met her burden in connection with opposing the anti-SLAPP motion as to these causes of action. This appeal followed.

## DISCUSSION

### I. *Section 425.16 and the Standard of Review*

Section 425.16, known as the anti-SLAPP statute, provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) "The phrase 'arising from' . . . has been interpreted to mean that 'the act underlying the plaintiff's cause' or 'the act which forms the basis for the plaintiff's cause of action' must have been an act in furtherance of the right of petition or free speech." (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1001.) "The goal [of section 425.16] is to eliminate meritless or retaliatory litigation at an early stage of the proceedings." (*Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 806.)

Courts engage in a two-step process in determining whether a cause of action is subject to a special motion to strike under section 425.16. First, the court determines if the challenged cause of action arises from protected activity. If the defendant makes such a showing, the burden shifts to the plaintiff to establish, with admissible evidence, a reasonable probability of prevailing on the merits. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP

---

[4] The trial court order, again presumably erroneously, identifies appellant's complaint as a cross-complaint.

6

statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Id.* at p. 89.)

A ruling on a section 425.16 motion is reviewed de novo. (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 645.) We review the record independently to determine whether the asserted cause of action arises from activity protected under the statute and, if so, whether the plaintiff (here, the cross-complainant) has shown a probability of prevailing on the merits. (*ComputerXpress, Inc. v. Jackson, supra,* 93 Cal.App.4th 993, 999; *Seelig v. Infinity Broadcasting Corp., supra,* 97 Cal.App.4th 798, 807.)

## II. *"Arising From"*

Appellant asserts that the issues raised in respondent's first and second causes of action implicate her protected speech in an almost identical manner as that stated by the Supreme Court in *Navellier*. In *Navellier,* disputes arose regarding the management of an investment fund. (*Navellier, supra*, 29 Cal.4th at p. 85.) The original organizers of the fund sued an independent trustee of the fund in federal court. (*Ibid.*) A settlement agreement was reached with regard to one of the claims, and the independent trustee signed a release of his claims in connection with the execution of the settlement agreement. (*Id.* at p. 86.) The original organizers filed an amended complaint reflecting the partial settlement of their claims; the independent trustee responded by filing counterclaims against the original organizers. (*Ibid.*) Relying on the release, the original organizers successfully moved for summary judgment on several of the counterclaims. (*Id.* at pp. 86–87.)

The original organizers subsequently sued the independent trustee in state court for fraud ("in misrepresenting his intention to be bound by the Release") and breach of contract ("by filing counterclaims in the federal action"). (*Navellier, supra,* 29 Cal.4th at p. 87.) Relying on the plain language of section 425.16, our Supreme Court held that the state court action arose from protected activity. The independent trustee's "negotiation and execution of the Release . . . involved 'statement[s] or writing[s] made in connection with an issue under consideration or review by a . . . judicial body' [citation], i.e., the federal district court, and his arguments respecting the Release's validity were

7

'statement[s] or writing[s] made before a . . . judicial proceeding' [citation], i.e., the federal action." (*Navellier,* at p. 90.) "A claim for relief filed in federal district court indisputably is a 'statement or writing made before a . . . judicial proceeding' [citation]." (*Ibid.*)

The issues raised in respondent's first and second causes of action implicate appellant's protected speech in that they are founded upon contractual agreements, representations, and/or statements made during prior litigation involving the parties. The cross-complaint alleges that the parties reached oral agreements during the prior litigation, specifically that appellant would refrain from foreclosing on and release her deed of trust against respondent in exchange for respondent's cooperation in her action against Wong. The action was filed because of, and in response to, appellant's current complaint for judicial foreclosure and breach of contract. Respondent contends, however, that *Navellier* is distinguishable because the acts complained of in her cross-complaint occurred *after* the prior case was concluded, and therefore do not arise from constitutionally protected activity. We need not decide whether the first prong of the anti-SLAPP statute is satisfied because we conclude that, even if the case does arise out of protected activity, appellant's motion must fail because respondent has made sufficient showing of a probability of prevailing on the merits.

### III. *Probability of Prevailing on the Merits*

"To demonstrate a probability of prevailing on the merits, the plaintiff must show that the complaint is legally sufficient and must present a prima facie showing of facts that, if believed by the trier of fact, would support a judgment in the plaintiff's favor. [Citations.] The plaintiff's showing of facts must consist of evidence that would be admissible at trial. [Citation.] The court cannot weigh the evidence, but must determine whether the evidence is sufficient to support a judgment in the plaintiff's favor as a matter of law, as on a motion for summary judgment. [Citations.] If the plaintiff presents a sufficient prima facie showing of facts, the moving defendant can defeat the plaintiff's evidentiary showing only if the defendant's evidence establishes *as a matter of*

8

*law* that the plaintiff cannot prevail." (*Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1346, italics added.)

IV. *Evidence Submitted in Opposition to the Anti-SLAPP Motion*

In her cross-complaint, respondent claims she entered into an agreement with appellant to provide evidence and testimony to support appellant in the Wong action in exchange for appellant's promise to not foreclose on the property and to release the deed of trust. The essential terms pled in the first cause of action for breach of contract state: "[Respondent] would support [appellant] with information, advice and testimony in [appellant's] lawsuit against [Wong], . . . in return for which [appellant] would refrain from foreclosing on and release her deed of trust against the subject property, to which [respondent] had acquired title." Similarly, in the second cause of action for fraud, the alleged factual promise was pled as "[appellant] stated that in exchange for [respondent's] help [in the Wong action], [appellant] would release and refrain from enforcing or otherwise attempting to collect on the Trust Deed referred to in the Complaint herein."

In opposition to appellant's motion, respondent filed declarations submitted by her, and by witnesses Gary Chew, Maggie Chew, and Eric Tong. Respondent states in her declaration that she had loaned money to Wong in the past to save her from losing her building to foreclosure. Wong offered her a promissory note of $300,000, secured by a deed of trust on the property. When Wong could not sell the property, respondent foreclosed and acquired the property at a trustee sale. After she was initially sued by appellant, respondent contacted appellant and told her she had no money to pay off her lien. They agreed that she would pay appellant on an installment payment plan, provided appellant would remove her lien so that respondent could refinance and lower her monthly payments. Reportedly, appellant's attorney later "cancelled" the agreement. After an unpleasant exchange in a restaurant, in which appellant accused respondent of committing elder abuse, respondent decided to draft another agreement to resolve the matter. Appellant signed the agreement. Respondent later was informed that appellant's attorney had also voided this agreement.

9

Subsequently, appellant, Maggie Chew, Eric Tong, and respondent went together to meet with Tong's attorney. Respondent stated: "On our way back to San Francisco [from the meeting], [appellant] asked me to help her to prove that Wong had acted fraudulently. I told [appellant] that I could only help if her complaint against me and the judicial foreclosure were dismissed. Otherwise, there would be no incentive for me to help her. She agreed to do so in [Chew] and [Tong's] presence." The declarations of Chew and Tong confirm this account. Respondent testified at trial and there appears to be no dispute that her testimony was beneficial to appellant. Respondent thus submitted evidence showing the existence of an oral contract, her performance of the agreement, and appellant's breach of her promise to dismiss the foreclosure claim.

In support of her motion to strike, appellant submitted a transcript of respondent's testimony from the Wong trial. She claimed respondent testified "that the agreements that she had entered into with [appellant] were not valid or binding and acknowledged that [appellant] was adverse to her and that she knew [appellant] tried to foreclose on the deed of trust." On appeal, the following excerpted testimony is cited in support of appellant's position:

Q: "Is it true that if [appellant] gets a large judgment in this case that would benefit you?"

A: "It's [appellant's] money. She didn't tell me she's going to give any to me, so I don't know how I'm going to benefit."

Q: "You have never—you want [appellant] to get a judgment for $80,000 so that you don't have to pay her share of the property, correct?"

A: "Yes and no. And let me explain. I want [appellant] to chase [Wong] for the money for the justice of it. Because I foreclosed on the property that I have a paid—a formal appraisal report here that show that the property was only worth $770,000 because of all the tore up inside the building. [*Sic*.] [¶] So normally people foreclose and it's, you know, they foreclose and the property is worth a lot of money and that they foreclosed for a lesser amount. Well, I foreclose[d] on the property paying twice as much, so—that's besides the point. [¶] But what is in there is the justice of it all, that it was fraud, that

10

[Wong] getting me to sign the purchase agreement and all that. To my understanding, she never had intention of selling the property to [appellant]. There was no promissory note. There was no valid deed of trust, therefore, and her foreclosure really does not stand. [¶] So for me, it was a justice issue that if—I didn't take any money from [appellant]. [Wong] took the money from [appellant]. Why am I having to pay for [appellant] for something that I didn't get in the first place? And the property doesn't just give me anything in that sense."

The excerpted language does not say exactly what appellant claims it does. There is no reference to any agreements respondent might have made with appellant, much less any discussion of whether or not the agreements were or were not valid or binding. Respondent was asked if she would benefit if appellant obtained a large judgment. She answered that she did not see how she stood to benefit from that money. She also indicated that she was testifying "for the justice of it," and also because she did not see why she should have to pay appellant for something that she did not get. On appeal, we must " 'accept as true the evidence favorable to the [cross-complainant] [citation] and evaluate the [cross-defendant's] evidence only to determine if it has defeated that submitted by the [cross-complainant] as a matter of law.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.) Here, appellant's evidence at best creates a factual dispute that is insufficient to overcome respondent's prima facie case.

Appellant also claims respondent's evidence does not support her burden. She asserts the declarations establish only that appellant agreed to dismiss respondent from the prior litigation, not that there was any agreement to release the deed of trust or refrain from future enforcement. Taken in the context of the various agreements negotiated by the parties, the declarations submitted by respondent support the inference that appellant promised to dismiss the prior complaint *and* refrain from pursuing a judicial foreclosure action in exchange for respondent's cooperation in the Wong action.

11

**DISPOSITION**

The trial court's order is affirmed.

_____
Dondero, J.

We concur:

_____
Margulies, Acting P.J.

_____
Banke, J.