Filed 3/20/15  Revitz v. Mokhtarzadeh CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| STEVEN J. REVITZ et al., | B250816 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. SC119086) |
| v. | |
| SHAHROKH MOKHTARZADEH et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Allan J. Goodman, Judge.  Reversed.

Cheong Denove Rowell & Bennett and John D. Rowell for Plaintiffs and Appellants.

Law Offices of Shahrokh Mokhtarzadeh and Nancy Zhang for Defendants and Respondents.

Steven J. Revitz and his professional corporation law firm (collectively Revitz) appeal a judgment after the granting of a special motion to strike (Code Civ. Proc., § 425.16)[1] their complaint against Shahrokh Mokhtarzadeh and his professional corporation law firm (collectively Mokhtarzadeh). Revitz alleges a single count for malicious prosecution arising from a prior legal malpractice action against him in which Mokhtarzadeh represented the plaintiff, Benny Newman. Newman voluntarily dismissed his complaint without prejudice before the scheduled hearing on Revitz's summary judgment motion.

The trial court here found that Revitz failed to make a prima facie showing that the voluntary dismissal constituted a favorable termination on the merits. Revitz contends he made such a prima facie showing. He also contends he made a prima facie showing on the other elements of his malicious prosecution claim. We agree and reverse the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

1.      *The Breach of Contract Lawsuit: Amusement Industry, Inc. v. Newman*

Benny Newman agreed to sell a parcel of land on Alvarado Street for a shopping center to Amusement Industry, Inc. (AII) for $6 million. Newman reneged on the deal -- ostensibly because his wife refused to go along with it -- and AII sued him. Newman retained attorney Steven Revitz to represent him in the lawsuit. Revitz hired a real estate expert, William Pentz, to provide an estimate of value for the property. Pentz concluded that the property was worth $6,850,000 to $7,850,000 and that "the market price should be" $6,900,000 to $7,200,000. Revitz wrote Newman a letter recommending that they not designate Pentz as an expert in the lawsuit. That the property's value substantially exceeded the agreed-upon sale price could, Revitz explained, provide a basis for damages for breach of contract that AII could recover. Revitz proposed to Newman that they call instead as an expert witness Newman's

---

[1]      A special motion to strike is commonly known as an anti-SLAPP motion. SLAPP is an acronym for Strategic Lawsuit Against Public Participation. All further statutory references are to the Code of Civil Procedure unless stated otherwise.

listing agent, Brian Noh, who would testify that the property was worth only $6 million. Revitz also recommended that they not depose AII's appraiser, but instead rely on Noh's testimony as well as Newman's own testimony that the properties AII's appraiser used in his "comparables" were different from the Alvarado parcel. Newman agreed with this plan.

The court ordered the case into binding arbitration. On Newman's behalf, Revitz argued -- among other things -- that because the Newmans believed the parcel to be community property[2] and Newman's wife had not agreed to the sale, the contract was invalid. Revitz also called Noh to testify about the property's value. Newman and his wife Jasmine testified as well.

In an award issued January 18, 2009, the arbitrator rejected Newman's defenses and ordered him to pay AII $289,657 in damages and $111,024.25 in attorney fees and costs. The arbitrator found that Newman "did enter into, and breach, a valid contract for the sale of the Alvarado Property" to AII. The arbitrator stated that the Newmans' holding of the property as tenants in common was not "accidental or inadvertent," noting that previously they had "knowingly held property as separate property and as limited partners."

As of late January 2011, Newman owed Revitz more than $40,000 in unpaid attorney fees.

2.      *The Malpractice Lawsuit and Cross-Complaint:  Newman v. Revitz*

In February 2011 Newman sued Revitz for professional negligence. Newman alleged that Revitz had failed to hire a qualified appraiser to testify in the arbitration, failed to challenge AII's appraiser's conclusions, and failed to "take steps to void the original sale agreement as unenforceable." Revitz cross-complained against Newman for the unpaid attorney fees Newman owed him.

On May 5, 2011, Revitz's counsel sent a letter to Newman's counsel, Jacks & Maybaum, stating that Newman's complaint was meritless and demanding a dismissal.

---

[2]      The Newmans had held the property as a limited partnership. When they refinanced they changed the ownership to a tenancy-in-common.

The letter noted that Revitz had hired Pentz, whose report showed the property value substantially exceeded the contract price. Revitz's lawyer explained that -- if Revitz had called Pentz as a witness -- the arbitrator might have awarded AII damages for breach of contract based on the higher value. The letter said Revitz had advised Newman of this risk and Newman agreed not to present Pentz's appraisal in the arbitration and to rely instead on Noh's testimony. Revitz's attorney also noted that Revitz had presented a "community property defense" in the arbitration and had done so competently.

Revitz's counsel also served written discovery requests on Newman. The Maybaum firm asked for several extensions of time to respond to the discovery requests. In June 2011 the Maybaum firm moved for leave to withdraw as Newman's counsel. The firm requested leave of court because Newman refused to sign a substitution of attorney. While that motion was pending, the Maybaum firm sent Revitz a letter dated September 7, 2011, offering to dismiss Newman's malpractice complaint if Revitz would dismiss his cross-complaint for unpaid fees. Revitz rejected Newman's offer on September 9. On September 22, 2011, the court granted the Maybaum firm's motion for leave to withdraw.

That same day, September 22, 2011, Shahrokh Mokhtarzadeh substituted in as counsel for Newman. Six days later, Revitz's attorney sent Mokhtarzadeh a letter stating that Newman's complaint was meritless, demanding a dismissal, and enclosing a copy of the May 5 letter to the Maybaum firm. On September 30, 2011, Revitz himself sent Mokhtarzadeh a letter. Revitz wrote that Newman's complaint was frivolous, that the Maybaum firm undoubtedly had withdrawn for that reason, and that continued prosecution of the lawsuit could constitute malicious prosecution under *Zamos v. Stroud* (2004) 32 Cal.4th 958, 970 (*Zamos*). Mokhtarzadeh never answered either letter.

Revitz filed a motion to compel discovery and the trial court granted the motion in late October 2011. The court deemed certain matters admitted as true. The court also awarded $2,700 in sanctions.

On January 27, 2012, Revitz filed a motion for summary judgment or summary adjudication of issues. Revitz asserted that he had not breached his duty of care to Newman. Revitz contended that his decision not to call Pentz to testify in the arbitration was reasonable. He also argued that he had presented all of the evidence he could to support Newman's defense that the sales contract was unenforceable because Newman's wife had not signed it. Revitz noted the arbitrator and the Court of Appeal found the defense inapplicable as a matter of law in any event. Revitz also asserted that Newman was barred by unclean hands because his own decisions and his dishonesty were responsible for all of the harm he suffered. Revitz submitted his own declaration, Pentz's declaration, deposition testimony of Pentz and Noh, correspondence, and other documents.

In the meantime, Mokhtarzadeh apparently had asked Revitz for a settlement offer. In a January 26, 2012 letter, Revitz told Mokhtarzadeh he would accept Newman's payment of his unpaid bills plus interest (approximately $45,573), plus $15,000 for the damage caused by Newman's malpractice lawsuit. On January 27, 2012, the parties met at Mokhtarzadeh's office. Newman offered to settle by paying Revitz $20,000 in cash immediately. Revitz rejected the offer but, on January 30, sent Mokhtarzadeh another letter, reducing his demand to $50,000 -- $35,000 upon signing and the balance of $15,000 over the next two years.

On February 3, 2012, Revitz sent Mokhtarzadeh yet another proposal: Newman would pay $10,000 upon signing and the balance of $40,000 in monthly installments over the next two years. As the parties already had discussed, Newman would stipulate to the granting of Revitz's summary judgment motion and the entry of judgment against him on Revitz's cross-complaint. Mokhtarzadeh would sign a letter for Revitz to present to his malpractice carrier stating that Newman's lawsuit had been meritless from the start. Mokhtarzadeh told Revitz's lawyer that Newman accepted the offer. Revitz spent the weekend preparing a settlement agreement, a stipulation for entry of judgment, and the draft letter for Mokhtarzadeh to sign for Revitz to send to his malpractice carrier.

5

Notwithstanding Mokhtarzadeh's statement to Revitz's attorney on February 3 that Newman agreed to the settlement, on February 6, 2012, Newman refused to resolve the case on the agreed-upon terms. Mokhtarzadeh told Revitz that Newman "was a very difficult client and he could not control" him. However, according to Revitz, Newman later told him that Mokhtarzadeh told Newman *not* to go through with the settlement because he (Mokhtarzadeh) "thought he could negotiate a better deal for Newman." On February 9, 2012, Mokhtarzadeh sent Revitz a letter proposing that Newman pay only $25,000. If Revitz did not accept the $25,000 offer, Mokhtarzadeh wrote, Newman would dismiss his malpractice complaint without prejudice and proceed to trial on Revitz's cross-complaint for fees. Revitz rejected Newman's offer.

On February 16, 2012, before his opposition to Revitz's summary judgment motion was due, Mokhtarzadeh filed a request to dismiss Newman's legal malpractice case without prejudice.

In April 2012 trial on Revitz's cross-complaint took place. Newman argued that Revitz had failed to present an appraisal in the arbitration. The trial court issued a statement of decision on May 30, 2012. The court found that Newman had agreed with Revitz's advice not to present Pentz's report in the arbitration and that the decision was prudent. The court also rejected Newman's claim that Revitz had not made reasonable efforts to settle AII's lawsuit, concluding that settlement failed because Newman had been unreasonable. The trial court awarded Revitz $48,392.25 in damages and prejudgment interest.

3. *The Malicious Prosecution Lawsuit: Revitz v. Mokhtarzadeh and Newman*

a. *Revitz's Complaint*

In November 2012 Revitz sued Newman and Mokhtarzadeh for malicious prosecution. Revitz alleged that there was no probable cause to file and prosecute Newman's lawsuit for malpractice, and that the case was brought to serve as a negotiating tool to avoid paying Revitz the attorney fees Newman owed him. Revitz also alleged that Mokhtarzadeh had no probable cause to continue to prosecute the case and that he did so only to force Revitz to settle on the cross-complaint. Revitz

6

alleged that Newman and Mokhtarzadeh knew Revitz's summary judgment motion would succeed and they voluntarily dismissed Newman's complaint for that reason before the motion could be heard.

### b. *The Special Motion to Strike*

In January 2013 Mokhtarzadeh filed a special motion to strike Revitz's complaint. He argued that the malicious prosecution complaint arose from an act in furtherance of his constitutional right of petition or free speech in connection with a public issue and that Revitz could not establish a probability of prevailing on his claim.[3]

Revitz opposed Mokhtarzadeh's motion. He conceded that his malicious prosecution complaint arose from an act in furtherance within the meaning of the anti-SLAPP statute. But, Revitz argued, evidence he presented in his opposition established a prima facie showing on each element of his malicious prosecution claim. Revitz submitted his own declaration, a declaration by his attorney in Newman's malpractice case, and a declaration by Noh's lawyer. Revitz also requested judicial notice of several documents filed in the malpractice case as well as a statement of decision filed in Newman's cross-action against Noh, in which the trial court had found Newman to be "a completely unreliable witness."

Mokhtarzadeh filed his own declaration with his reply. He said he did not receive the complete case file in the malpractice case "until some months after September of 2010 [sic]."[4] Mokhtarzadeh said he at first assumed Newman's former counsel, the Maybaum firm, had determined there was a basis for filing the complaint. But, he stated, he had "not received any such analysis from either the Maybaum firm and/or [the firm that represented Newman on appeal from the judgment on Revitz's cross-complaint.]" Mokhtarzadeh said he had "no idea if they did conduct such [an]

---

[3]     Newman also filed a special motion to strike, which the trial court granted. Revitz has not appealed the order granting Newman's motion.

[4]     Mokhtarzadeh apparently meant to refer to September 2011, the month he became Newman's counsel of record.

analysis or if they retained an expert to conduct such [an] analysis while they represented [Newman]."

Mokhtarzadeh stated he never had a chance to hire an expert to evaluate Newman's malpractice claim. Mokhtarzadeh declared that he "advised" Newman to dismiss his malpractice suit against Revitz because Newman apparently was unwilling to fund the retention of an expert. Mokhtarzadeh wrote in his declaration that he "had no control over the process of retaining an expert on behalf of Defendant Newman on [his] own," and that the lawsuit "was therefore dismissed for that reason." Mokhtarzadeh stated that the dismissal "had nothing to do with the filing of the motion for summary judgment, but [his] client's financial ability to retain services of an appropriate expert witness to assist him with the trial preparations as well as the opposition to the motion for summary judgment."

On May 9, 2013, the trial court granted Mokhtarzadeh's special motion to strike. The court granted Revitz's request for judicial notice in part. The court first found -- as Revitz had conceded -- that Revitz's complaint arose from an act in furtherance of Mokhtarzadeh's constitutional right of petition or free speech in connection with a public issue. The court ruled, however, that Revitz had failed to make a prima facie showing of a favorable termination on the merits. The court stated that Revitz had not established that Mokhtarzadeh's voluntary dismissal of Newman's complaint reflected an opinion that the complaint lacked merit. The court noted that plaintiffs often dismiss lawsuits for reasons unrelated to the merits, such as to avoid the costs of litigation. The court referred to Newman's declaration that he authorized the dismissal due to the heavy burden of litigating the case.[5] Because the trial court found that Revitz had failed to show a favorable termination on the merits, it did not decide whether Revitz had made a prima facie showing on the elements of lack of probable cause and malice.

The trial court's minute order directed Mokhtarzadeh to prepare a written order and a proposed judgment of dismissal. Mokhtarzadeh submitted a proposed judgment,

---

[5]     Newman's declaration does not appear in the appellate record.

8

but apparently did not submit a proposed order. The trial court signed and filed the judgment of dismissal on June 26, 2013.

    4.    *Appeal*

Revitz filed a notice of appeal from the judgment on August 12, 2013.[6]

## *CONTENTIONS*

Revitz contends the trial court erred by granting the special motion to strike because (1) he made a prima facie showing that the voluntary dismissal of Newman's complaint constituted a favorable termination on the merits and (2) he made a prima facie showing on the elements of lack of probable cause and malice.

## *DISCUSSION*

    1.    *Special Motion to Strike*

"A special motion to strike is a procedural remedy to dispose of lawsuits brought to chill the valid exercise of a party's constitutional right of petition or free speech. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056 [39 Cal.Rptr.3d 516, 128 P.3d 713].) The purpose of the anti-SLAPP statute is to encourage participation in matters of public significance and prevent meritless litigation designed to chill the exercise of First Amendment rights. (§ 425.16, subd. (a).) The Legislature has declared that the statute must be 'construed broadly' to that end. (*Ibid.*)

"A cause of action is subject to a special motion to strike if the defendant shows that the cause of action arises from an act in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue and the plaintiff fails to demonstrate a probability of prevailing on the claim. (§ 425.16,

---

[6] An order granting a special motion to strike is appealable. (§§ 425.16, subd. (i), 904.1, subd. (a)(13).) The proper appeal is from the order granting the motion rather than from a subsequent judgment. (*Melbostad v. Fisher* (2008) 165 Cal.App.4th 987, 997; *Maughan v. Google Technology, Inc.* (2006) 143 Cal.App.4th 1242, 1247.) But for purposes of the time to appeal, the date of entry of an order is delayed if a minute order directs a party to prepare a written order, as here. In those circumstances, the date of entry is the date of filing of the subsequent signed order. (Cal. Rules of Court, rule 8.104(c)(2).) We conclude that absent a subsequent signed order, the proper appeal is from the judgment. The notice of appeal here was timely. (*Id.*, rule 8.104(a)(1)(C).)

subd. (b)(1); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].)  On appeal, we independently review both of these determinations.  (*Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1345–1346 [63 Cal.Rptr.3d 798].)"  (*Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1165-1166 (*Faigin*).)

"A plaintiff establishes a probability of prevailing on the claim by showing that the complaint is legally sufficient and supported by a prima facie showing of facts that, if proved at trial, would support a judgment in the plaintiff's favor.  (*Taus v. Loftus* (2007) 40 Cal.4th 683, 713–714 [54 Cal.Rptr.3d 775, 151 P.3d 1185].)  The court cannot weigh the evidence, but must determine as a matter of law whether the evidence is sufficient to support a judgment in the plaintiff's favor.  (*Ibid.*)  The court must consider not only facts supported by direct evidence, but also facts that reasonably can be inferred from the evidence.  (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 822 [124 Cal.Rptr.3d 256, 250 P.3d 1115] (*Oasis West*).)  The defendant can defeat the plaintiff's evidentiary showing by presenting evidence that establishes as a matter of law that the plaintiff cannot prevail.  (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733].)  The defendant cannot defeat the plaintiff's evidentiary showing, however, by presenting evidence that merely contradicts that evidence but does not establish as a matter of law that the plaintiff cannot prevail.  (*Oasis West*, *supra*, at p. 820.)"  (*Faigin*, *supra*, 198 Cal.App.4th at pp. 1165-1166.)

"Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute— i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute."  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

2.    *Law of Malicious Prosecution*

The elements of malicious prosecution are (1) a favorable termination on the merits of a prior action; (2) the defendant initiated or continued to prosecute the action without probable cause; and (3) the defendant acted with malice in initiating or

continuing to prosecute the action. (*Siebel v. Mittlesteadt* (2007) 41 Cal.4th 735, 740; *Zamos v. Stroud, supra,* 32 Cal.4th at p. 970; *Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1056.) *Zamos*, *supra*, 32 Cal.4th at page 970, held that "an attorney may be held liable for malicious prosecution for continuing to prosecute a lawsuit discovered to lack probable cause." The rule that an attorney may be held liable for continuing to prosecute an action after discovering that it lacks probable cause compels the conclusion that the defendant's malice in continuing to prosecute an action in those circumstances would satisfy the element of malice. (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 226 (*Daniels*); *Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1408 & fn. 12 (*Sycamore*).)

A favorable termination on the merits means a termination in favor of the defendant in the prior action in circumstances reflecting the defendant's innocence of the alleged misconduct. (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 341-342.) The voluntary dismissal of an action constitutes a favorable termination on the merits if the circumstances of the dismissal reflect the opinion of the trial court or the plaintiff that the action had no merit. (*Sycamore*, *supra*, 157 Cal.App.4th at p. 1399.) Conflicting evidence as to the reasons for the dismissal creates a question of fact for the trier of fact to decide. (*Ibid.*; cf. *Ross v. Kish* (2006) 145 Cal.App.4th 188, 198.)

"Probable cause" in the context of malicious prosecution means an objectively reasonable belief that the action is legally tenable based on the facts known to the malicious prosecution defendant at the time. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292; *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 878 (*Sheldon Appel*).) A person has no probable cause to initiate or continue to prosecute an action if the person relies on facts that he or she has no reasonable cause to believe to be true, or seeks recovery on a legal theory that is untenable under the facts known to him or her. (*Soukup*, *supra*, at p. 292.) There is no probable cause to initiate or continue to prosecute an action if, and only if, no reasonable attorney would believe that the action has any merit and any reasonable attorney would agree that the action is

11

totally and completely without merit.  (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 743, fn. 13 (*Jarrow*); *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 817 (*Wilson*).)

The existence of probable cause to initiate or continue to prosecute an action in light of the facts known to the malicious prosecution defendant at the time is a legal question for the court to decide.  (*Wilson*, *supra*, 28 Cal.4th at p. 817; *Sheldon Appel*, *supra*, 47 Cal.3d at p. 875.)  A controversy as to what facts were known to the malicious prosecution defendant at the time the action was initiated or prosecuted presents a question of fact for the trier of fact.  (*Sheldon Appel*, *supra*, at p. 881.)  Probable cause is a low threshold in order to protect a litigant's right to assert arguable legal claims, even if the claims are extremely unlikely to succeed.  (*Jarrow, supra*, 31 Cal.4th at pp. 742-743; *Wilson, supra*, at p. 817.)

Malice concerns a person's subjective intent in initiating or continuing to prosecute an action, and is a question of fact for the trier of fact.  (*Sheldon Appel*, *supra*, 47 Cal.3d at p. 874.)  A person initiates or continues to prosecute an action with malice only if he or she acts primarily for an improper purpose; that is, a purpose other than to secure a proper adjudication on the merits.  (*Albertson v. Raboff* (1956) 46 Cal.2d 375, 383; *Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 494 (*Downey Venture*); see Rest.2d Torts, § 676.)  Such situations may include (1) when the person does not believe that the claim is meritorious; (2) when the person prosecutes the action because of hostility or ill will, to harass the defendant; (3) when the person prosecutes the action to deprive another person of the beneficial use of his or her property; (4) when the person prosecutes the action to force a settlement unrelated to the merits of the action; and (5) when a person prosecutes a cross-complaint to delay adjudication of the complaint.  (*Albertson*, *supra*, 46 Cal.2d at p. 383, citing Rest., Torts, § 676, com. b; *Sycamore*, *supra*, 157 Cal.App.4th at p. 1407; see Rest.2d Torts, § 676, com. c., pp. 462-463.)

Malice turns on the subjective intent of the malicious prosecution defendant and therefore cannot be inferred based solely on the determination that the action objectively

lacked probable cause. (*Jarrow*, *supra*, 31 Cal.4th at p. 743; *Downey Venture*, *supra*, 66 Cal.App.4th at p. 498.) Lack of probable cause is a factor in determining the presence of malice, but is insufficient alone to establish malice. (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1543.) " 'Merely because the prior action lacked legal tenability, as measured objectively . . . *without more*, would not logically or reasonably permit the inference that such lack of probable cause was accompanied by the actor's subjective malicious state of mind.' [Citation.]" (*Jarrow*, *supra*, at p. 743, quoting *Downey Venture*, *supra*, at p. 498.) Rather, a malicious prosecution plaintiff must present some other evidence of the defendant's subjective intent to misuse the judicial system for an improper purpose, such as evidence that the defendant subjectively believed that a cause of action was meritless. (*Jay*, *supra*, at p. 1543; *Downey Venture*, *supra*, at p. 498.)

      3.     *Revitz Established a Prima Facie Case Supporting his Complaint for Malicious Prosecution*

          a.     *Favorable Termination*

Newman voluntarily dismissed his legal malpractice case after Revitz filed a summary judgment motion and before Newman's opposition to the motion was due. The evidence presented in support of the motion showed there were sound reasons for not presenting testimony by a licensed real estate appraiser in the arbitration. If the value of the property substantially exceeded the $6 million contract price, as Pentz's report concluded, evidence of that value could have resulted in a greater award of damages against Newman for breach of contract.[7] The evidence Revitz presented in support of his motion also demonstrated -- contrary to the allegations in Newman's

---

[7] Pentz stated in his declaration filed in support of Revitz's motion for summary judgment that he was a licensed real estate broker and sales agent. Although Pentz apparently was not a licensed real estate appraiser, his opinion is evidence that the property value substantially exceeded the contract price. The expert opinion of a real estate broker or sales agent on property value is admissible in the trial court's discretion. (*In re Marriage of Hokanson* (1998) 68 Cal.App.4th 987, 995-996; *Douglas v. Ostermeier* (1991) 1 Cal.App.4th 729, 737-738.)

complaint -- that Revitz challenged the opinion of value AII's appraiser presented by calling Noh to testify to a lower value, and that Revitz challenged the sales contract as unenforceable because Newman's wife did not sign the contract.

Revitz had explained all of this to Newman's former counsel in the letter dated May 5, 2011.  He provided the same letter to Mokhtarzadeh on September 28, 2011, after the Maybaum firm filed a motion to be relieved and Mokhtarzadeh substituted in as Newman's attorney.  There is no evidence that Newman, the Maybaum firm, or Mokhtarzadeh made any attempt to substantiate or justify the allegations in their malpractice complaint.  Instead, Newman and Mokhtarzadeh apparently used the complaint as a negotiating tool to try to eliminate or reduce Newman's liability on the cross-complaint for attorney fees.  Newman voluntarily dismissed his complaint after he backed out of the settlement agreement with Revitz – whether for his own reasons or on Mokhtarzadeh's advice --  and faced having to oppose the summary judgment motion.

The declaration Mokhtarzadeh filed in the trial court in support of his reply stated that Newman dismissed his complaint because he could not afford to hire an expert witness.  But Mokhtarzadeh admits that, to his knowledge, Newman's former counsel never had determined whether there was a basis for prosecuting the legal malpractice complaint in the first place, nor had they hired an expert to make that determination.  Mokhtarzadeh's acknowledgement that after reading the file he unsuccessfully urged Newman to hire an expert supports reasonable inferences that Mokhtarzadeh never determined there was a valid basis for prosecuting the complaint and that Newman and Mokhtarzadeh knew the complaint was meritless.  By Mokhtarzadeh's own admission, he agreed to take on the case and pursued it for months without evaluating – as an attorney – whether the complaint had any legal merit.  Indeed, Revitz stated under oath in his declaration that Mokhtarzadeh admitted to him in late January 2012 that the Maybaum firm "should not have started the case."  Mokhtarzadeh did not specifically deny having made that particular statement but claimed in his declaration that all of the statements Revitz had "attributed" to him in his declaration regarding his "valuation" of Newman's case were false.

14

The assertion that Newman dismissed his complaint for financial reasons unrelated to the merits creates a question of fact for the trier of fact, but fails to establish as a matter of law that the voluntary dismissal of the legal malpractice complaint did not reflect a belief that the complaint lacked merit.

We conclude that the evidence of the circumstances surrounding the voluntary dismissal is sufficient to support a finding by the trier of fact that the dismissal reflected Newman's view, and that of his attorney Mokhtarzadeh, that his complaint lacked merit. The evidence therefore establishes a prima facie case on the element of a favorable termination on the merits.

b. *Lack of Probable Cause*

Revitz explained in his May 5 letter that there were sound reasons for not presenting testimony by a licensed real estate appraiser in the arbitration. He also explained why he relied on Noh's testimony about the property value, and stated that he had presented a community property defense in the arbitration. Revitz sent Mokhtarzadeh a copy of the letter on September 28, 2011. Revitz's declaration and the other evidence presented in support of his summary judgment motion in the malpractice action substantiated the statements in his letter. The evidence tends to show there was no factual basis for Newman's complaint. Mokhtarzadeh has cited no evidence to the contrary.

Mokhtarzadeh became counsel of record for Newman in the malpractice case on September 22, 2011, and remained counsel of record until filing the dismissal on February 16, 2012. He acknowledged that he did not receive the complete case file until "some months after" becoming counsel of record. He also admitted that he had "no idea" whether Newman's former counsel had determined that there was a basis for prosecuting the complaint or had hired an expert to make that determination. Mokhtarzadeh presented no evidence suggesting that there was any reason to believe that the legal malpractice complaint was legally tenable based on the facts known to him.

15

We conclude that the evidence in the record tends to show not only that the legal malpractice claim was unlikely to succeed, but that the claim was not even arguably tenable at the time of Mokhtarzadeh's continued prosecution of the complaint. The evidence therefore establishes a prima facie case on the element of lack of probable cause.[8]

  c.  *Malice*

Mokhtarzadeh's failure to try to justify the merits of the malicious prosecution complaint at any time and the absence of any evidence that he believed the complaint had merit could support a reasonable inference that Mokhtarzadeh knew there was no probable cause to continue to prosecute the complaint. In our view, that evidence together with the evidence suggesting a lack of probable cause and Mokhtarzadeh's and Newman's apparent willingness to settle the malicious prosecution action by dismissing the complaint in exchange for a reduction in Newman's liability on the cross-complaint could support a reasonable inference that Mokhtarzadeh continued to prosecute the complaint for an improper purpose. Moreover, as noted, Revitz submitted a declaration in the trial court stating, under oath, that Newman told him that he had backed out of the settlement in early February 2012 because Mokhtarzadeh told Newman he could get him a better deal.

Again, the proffered evidence that Newman dismissed his complaint for financial reasons unrelated to the merits creates a question of fact for the trier of fact to decide. It fails to establish the absence of malice as a matter of law.

We therefore conclude that Revitz made a prima facie showing on the element of malice and on each element of his claim for malicious prosecution, and that the trial court erred by granting the special motion to strike.

---

[8]  Mokhtarzadeh does not discuss either lack of probable cause or malice in his brief.

## *DISPOSITION*

The judgment is reversed.  Revitz is entitled to recover his costs on appeal.

## *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

EGERTON, J.*

WE CONCUR:

KITCHING, Acting P. J.

ALDRICH, J.

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.